UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
ROBERT C. LUNNON,                   :
                                    :
                    Plaintiff,      :
                                    :
                                    :
         -against-                  :
                                    :
MICHAEL J. ASTRUE, Commissioner of  :
Social Security,                    :
                                    :
                    Defendant.      :
-----------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:   8-25-08

Pro Se

07 Civ. 7719 (LAK) (THK)

**REPORT AND RECOMMENDATION**

**TO: THE HON. LEWIS A. KAPLAN, UNITED STATES DISTRICT JUDGE.**
**FROM: THEODORE H. KATZ, UNITED STATES MAGISTRATE JUDGE.**

Plaintiff, Robert C. Lunnon, commenced this action pro se, under 42 U.S.C. § 405(g), to obtain judicial review of the Commissioner of Social Security's finding that he was not eligible for Supplemental Security Income ("SSI") benefits based on disability. Defendant, the Commissioner of Social Security, has moved for judgment on the pleadings, under Rule 12(c) of the Federal Rules of Civil Procedure, and the motion was referred to this Court for a Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72.1(a) of the Local Civil Rules of the Southern District of New York. Plaintiff has not responded to the motion. For the following reasons, this Court recommends that Defendant's motion be granted, and this action be dismissed with prejudice.

1

**BACKGROUND**

I.   Procedural Background

Plaintiff filed an application for SSI benefits on May 6, 2005, alleging an inability to work because of lower back pain and peptic ulcer disease. (See Administrative Record ("R."), at 26.) Plaintiff's application was denied on June 22, 2005. (See id. at 27-30.)  He then requested a hearing, which was held on January 30, 2007, before Administrative Law Judge Mark Sochaczewsky (the "ALJ"). (See id. at 140.)  In a decision dated February 12, 2007, the ALJ found that Plaintiff was not disabled under the Social Security Act. (See id. at 9-19.)  On May 24, 2007, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (See id. at 4-6.)  The decision of the Commissioner then became final. See 42 U.S.C. § 405(h); Pollard v. Halter, 377 F.3d 183, 191 (2d Cir. 2004).  This action followed.

II.  Factual Background

  A.   Non-Medical Evidence

Plaintiff was born on February 24, 1958.  (See R. at 34.)  The highest level of education he completed was the fifth grade.  (See id. at 42, 144.)

As a result of his back pain, which made sitting, standing, and walking troublesome, Plaintiff usually stayed home and spent his time watching television, playing checkers, building models of

2

planes and cars, and performing household chores. (See id. at 45, 112, 153.) He occasionally cooked and shopped for groceries. (See id. at 45, 47-48.) When he did leave his home, he usually sat in a park or visited friends and family. (See id. at 46, 154.) Plaintiff used public transportation. (See id. at 144.) If he walked long distances, he used a cane. (See id. at 51.)

B. Medical Evidence

1. Initial Clinical Visits

Plaintiff visited the St. Barnabas Community Enterprises Clinic ("St. Barnabas") on June 11, 2003. The doctor examined Plaintiff, and referred him for further examination for his rectal bleeding on July 3, 2003. (See id. at 72.) There is no record that the examination occurred. However, Plaintiff did go to the ear, nose, and throat clinic at St. Barnabas on July 22, 2003, complaining about hearing loss in his right ear. (See id. at 73.) Then, on November 1, 2003, Plaintiff visited the Bronx Lebanon Hospital Center, receiving treatment for back pain. (See id. at 74.)

2. Treating Physician

On July 12, 2004, Dr. Rajesh Patel, a pediatrician but Plaintiff's primary care physician, noted that Plaintiff showed him two prescription bottles for pain medications -- Oxycodone and Tylenol. (See id. at 83.) On September 22, 2004, Dr. Patel

3

diagnosed Plaintiff with peptic ulcers, chronic bronchitis, asthma, arthritis, and chronic back pain, all of which he determined were conditions that would last longer than a year and require continuous medical treatment. (See id. at 82.)

On February 8, 2005, Dr. Patel noted that Plaintiff's backache and chronic bronchitis required treatment as well as two weeks of rest. (See id. at 81.) On May 4, 2005, Dr. Patel stated in a letter that Plaintiff could no longer work and needed treatment because of chronic back pain, peptic ulcers, and chronic bronchial asthma. Dr. Patel prescribed six different medications: thiamine,[1] ranitidine,[2] cyproheptadine,[3] iron supplements, meloxicam,[4] and multivitamins. He also ordered a lumbosacral x-ray. (See id. at 80, 86-92.)

In a letter dated May 18, 2005, Dr. Patel verified that Plaintiff was under his care for peptic ulcers and backaches, that would require continuous medical treatment. (See R. at 75.) He

---

[1] Thiamine, another name for vitamin B1, is necessary to prevent or treat stomach, heart, or nerve problems caused by thiamine deficiency. (See R. at 86.)

[2] Ranitidine reduces the amount of acid in the stomach. It is used to treat and prevent ulcers. (See id. at 87.)

[3] Cyproheptadine is an antihistamine used to treat allergies as well as relieve itching from skin conditions. (See id. at 88.)

[4] Meloxicam is used to treat arthritis. It reduces pain, swelling, and stiffness of joints. (See id. at 90.)

4

did, however, specify that Plaintiff was not suffering from asthma. (See id.)

On August 10, 2005, Dr. Patel submitted a medical source statement about Plaintiff's physical ability to do work-related activities. (See id. at 122-25.) According to Dr. Patel, Plaintiff's impairments[5] affected his ability to lift and carry. He could only lift and carry a maximum of ten pounds. (See id. at 122.) Plaintiff could only stand and walk less than two hours in an eight-hour workday. (Id.) According to Dr. Patel, Plaintiff's impairments affected his ability to sit, limiting him to less than six hours of sitting in an eight-hour workday. (See id. at 123.) Without describing the nature or degree, Dr. Patel noted that Plaintiff's ability to push and pull was limited in the upper extremities. (Id.) He did not provide any medical or clinical findings to support any of his conclusions. (Id.)

Dr. Patel also found that Plaintiff could never climb, balance, crawl, or stoop; and that he could only occasionally kneel or crouch. (Id.) Dr. Patel then noted Plaintiff's manipulative functions -- reaching, handling, fingering, and feeling -- were all occasionally limited. Dr. Patel supported these conclusions by

---

[5] It is unclear from the questionnaire what impairments Dr. Patel is specifying.

5

referencing "H.S.S. Systems."[6] (See id. at 123-24.) Dr. Patel also indicated that Plaintiff's sight, hearing, and speaking were limited by his impairments. (See id. at 124.)

Dr. Patel also submitted a medical source statement of Plaintiff's mental ability to do work-related activities. (See id. at 126-28.) He found that Plaintiff's impairments caused slight limitations of his ability to understand and remember short, simple directions; to carry out short, simple instructions; to understand, remember, and carry out detailed instructions; and to make judgments on simple work-related decisions. Dr. Patel provided no support for these assessments. (See id. at 126.) Dr. Patel found that Plaintiff's impairments caused moderate limitations on his ability to interact appropriately with the public, his supervisor(s), and co-workers; and, in addition, that Plaintiff experienced slight limitations in his ability to respond appropriately to work pressures and changes in a routine work setting. (See id. at 127.) Dr. Patel again cited "H.S.S. Systems" as his sole support for this last assessment. (Id.)

On January 29, 2007, Dr. Patel referred Plaintiff to an orthopedic clinic for an evaluation of his chronic back pain. (See id. at 137.) Dr. Patel also wrote a letter verifying his

---

[6] Dr. Patel is presumably referring to the report by Dr. Lavonna Branker, an internist at HS Systems, Inc., who conducted a consultative examination of Plaintiff. (See R. at 111-14.)

6

supervision of Plaintiff's medical care for the past ten years for chronic back pain, peptic ulcers, chronic bronchitis, and migraine headaches.    The doctor noted that Plaintiff would continue to require treatment for more than a year.    (See id. at 138.)

### 3.    Consultative Physician

On June 6, 2005, Dr. Lavonna Branker conducted a consultative examination of Plaintiff for the Social Security Administration ("SSA").    Dr. Branker first noted Plaintiff's medical history. Plaintiff's main complaints were back pain and ulcer disease.    (See id. at 111.)    She reported that Plaintiff had not undergone radiologic evaluation, surgery, or physical therapy.[7]    (Id.) Plaintiff denied any focal neurologic symptoms or sphincter abnormalities.    (Id.)    His pain had no radicular pattern; the pain worsened with bending, heavy lifting, and prolonged standing.    (Id.) Plaintiff took Mobic, methocarbamol, and acetaminophen, which provided partial relief.    (Id.)

Plaintiff claimed that his peptic ulcer disease was diagnosed in 1975.    (Id.)    Plaintiff had undergone a esophagogastroscopy[8] one or two years prior to Dr. Branker's evaluation, which revealed that

---

[7] Plaintiff did, however, have a previous lumbosacral x-ray (See R. at 92.)

[8] An esophagogastroscopy is an "examination of the interior of the esophagus and stomach by means of an endoscope."    Merriam-Webster's Medical Dictionary Online, http://medical.merriam-webster.com/medical/oesophagogastroscopy (last visited July 8, 2008).

7

Plaintiff had a bleeding ulcer which did not require a blood transfusion.  (Id.)  At the time of the esophagogastroscopy, Plaintiff had an episode of melena.[9]  (Id.)  To treat the ulcers, Plaintiff took Zantac and Maalox.  (Id.)

In addition, Plaintiff had decreased visual acuity in both eyes as well as dermatitis.  Those conditions were being treated with corrective lenses and fluocinonide cream, respectively.  (Id.)

Dr. Branker then physically examined Plaintiff. She reported that he was well-developed, well-nourished, and in no acute distress.  (See id. at 112.)  Plaintiff was neatly, casually dressed.  (Id.)  His behavior was appropriate.  (Id.)

Plaintiff's spine motion was normal except for decreased backward extension to thirty degrees.  (Id.)  He also had some lumbar tenderness without deformity or spasm.  (Id.) A lumbosacral x-ray came back negative.  (See id. at 113, 115.)

His lungs were clear when listened to with a stethoscope. (See id. at 112.)  There were no wheezes, rales, or rhonchi present.  (See id. at 113.)  Plaintiff's abdomen appeared normal. (Id.)

---

[9] Melena means "black, tarry, and foul-smelling stools." MedlinePlus Medical Dictionary, http://www.nlm.nih.gov/medlineplus/ency/article/003130.htm(last visited July 10, 2008).

Plaintiff's station and gait appeared normal; he walked
without assistance. (Id.) He also had no difficulty standing from
his seat or getting on and off the examining table. (Id.)
Plaintiff formed fists with both hands, and his hand dexterity was
normal. (Id.) All his joints retained full range of motion. (Id.)
Plaintiff performed a full squat. (Id.)

During the examination, Plaintiff appeared alert and oriented.
(Id.)  His deep tendon reflexes were normal and symmetrical
throughout. (Id.)  His motor and sensory skills were normal as
well. (Id.) Plaintiff completed a heel walk, toe walk, and tandem
walk. (Id.)

Dr. Branker diagnosed Plaintiff with clinically stable[10] lower
back pain with minimal decreased range of motion; a clinically
stable history of peptic ulcer disease; a clinically stable history
of dermatitis; and decreased visual acuity secondary to refractory
error. (Id.)

Dr. Branker's evaluation concluded that Plaintiff could walk,
sit, stand, lift, carry and handle objects, hear, speak, and
travel; he could also perform both sedentary and light activities.
(See id. at 114.)

---

[10] The medical definition of "stable" is "not changing or
fluctuating."  Merriam-Webster's Medical Dictionary Online,
http://medical.merriam-webster.com/medical/stable (last visited
July 10, 2008)

9

## DISCUSSION

### I.   Governing Law and Standard of Review

For purposes of SSI eligibility, a disability exists if a claimant cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(B). An individual's physical or mental impairment is not disabling under the Act unless it is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In assessing a claim of disability, the Commissioner must consider objective and subjective factors such as: (1) objective medical facts; (2) diagnoses or medical opinions based on those facts; (3) the claimant or other witnesses' subjective evidence of pain or disability; and (4) the claimant's educational background, age, and work experience. See Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999); Bluvband v. Heckler, 730 F.2d 886, 891 (2d Cir. 1984); Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983).

The Social Security Administration's regulations set forth a

10

five-step sequence to evaluate disability claims. <u>See</u> 20 C.F.R. §
404.1520.   The Second Circuit has explained the sequential
evaluation process as follows:

> if the Commissioner determines (1) that the
> claimant is not working, (2) that he has a
> 'severe impairment,' (3) that the impairment
> is not one [listed in Appendix 1 of the
> regulations] that conclusively requires a
> determination of disability, and (4) that the
> claimant is not capable of continuing in his
> prior type of work, the Commissioner must find
> him disabled if (5) there is not another type
> of work the claimant can do.

<u>Burgess v. Astrue</u>, __ F.3d __, No. 05-4327-cv, 2008 WL 3248567, *2
(2d Cir. Aug. 8, 2008) (quoting <u>Green-Younger v. Barnhart</u>, 335 F.3d
99, 106 (2d Cir. 2003) (internal quotations omitted)); <u>accord</u>
<u>Tejada v. Apfel</u>, 167 F.3d 770, 774 (2d Cir. 1999); <u>Rosa v.</u>
<u>Callahan</u>, 168 F.3d 72, 77 (2d Cir. 1999); <u>Perez v. Chater</u>, 77 F.3d
41, 46 (2d Cir. 1996); <u>see also</u> 20 C.F.R. §§ 404.1520, 416.920.
Claimants bear the burden of proof with respect to the first four
steps in the evaluation. <u>See</u> <u>Perez</u>, 77 F.3d at 46; <u>Rivera v.</u>
<u>Schweiker</u>, 717 F.2d 719, 722 (2d Cir. 1983).  The Commissioner must
prove, at the fifth step, that the claimant can obtain substantial
gainful employment in the national economy.    <u>See</u>    <u>Butts v.</u>
<u>Barnhart</u>, 416 F.3d 101, 103 (2d Cir. 2005); <u>see also</u> <u>Perez</u>, 77 F.3d
at 46 ("If the claimant satisfies her burden of proving the
requirements in the first four steps, the burden shifts to the

11

[Commissioner] to prove in the fifth step that the claimant is capable of working.").

This Court reviews the Commissioner's decision and the administrative record to determine whether the Commissioner's determination is supported by substantial evidence and relies upon the correct legal standards. See 42 U.S.C. § 405(g); Pollard v. Halter, 377 F.3d 183, 188 (2d Cir. 2004). "Substantial evidence . . . . means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971)(internal quotations omitted)). Where an ALJ's findings are based on substantial evidence, this Court must defer to them. See Barreto ex rel. Rivas v. Barnhart, No. 02 Civ. 4462 (LTS), 2004 WL 1672789, at *3 (S.D.N.Y. July 27, 2004) (citing Rosa, 168 F.3d at 77).

Before applying this standard of review, the Court must first determine whether the plaintiff received a full hearing and whether the ALJ complied with his affirmative duty to adequately develop the record and inquire into relevant facts. See Halloran, 362 F.3d at 31; Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990). In developing the record, the ALJ must discuss the relevant evidence and factors crucial to the overall determination with sufficient specificity to enable reviewing courts to decide whether the

12

determination is supported by substantial evidence. See Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984); Barreto, 2004 WL 1672789, at *3.

II.   The Commissioner's Decision

A.   Full and Fair Hearing

At the outset, the Court concludes that Plaintiff received a full and fair hearing before the ALJ, and that the ALJ complied with his affirmative duty to adequately develop the record and inquire into relevant facts. See Halloran, 362 F.3d at 31; Cruz, 912 F.2d at 11. At the hearing, the ALJ inquired into Plaintiff's medical conditions in order to assess their severity; he also inquired into Plaintiff's physical abilities and limitations. (See R. at 147-52.) The ALJ explored Plaintiff's past work experience, as well as Plaintiff's recreational physical activities. (See id. at 145-47, 154-55). The ALJ also reviewed the medical evidence. In so doing, the ALJ developed a thorough record of Plaintiff's medical history, which included opinions from his treating physician and another physician who had evaluated Plaintiff's conditions.

B.   Application of Proper Legal Standards

The Court also concludes that the ALJ applied the proper legal standards, correctly following the five-step process to determine whether Plaintiff was disabled within the meaning of the Social

13

Security Act. At the first step, the ALJ found that Plaintiff was not engaged in substantial gainful activity. (See id. at 14.) Plaintiff testified that he last worked in 1985, as a construction worker; his application, however, indicated he last worked in 1980, doing maintenance work for public assistance. (See id. at 38, 146). Nonetheless, Plaintiff was not engaged in substantial gainful activity at the time of, or subsequent to, his application for SSI.

The ALJ therefore correctly continued to step two and considered whether Plaintiff had a "severe impairment" that significantly limited his physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1520. The ALJ found that Plaintiff had a "history of back pain[] and [a] history of bleeding ulcers and stomach cramps," which were severe within the meaning of the Regulations. (See R. at 14.)

The ALJ next considered whether those conditions were severe enough to meet or "medically equal" one of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1, and concluded that none of Plaintiff's conditions rose to the level of severity necessary to constitute such an impairment. (See R. at 14-15.)

In light of his finding that Plaintiff did not have a listed impairment, the ALJ proceeded to step four, which entailed determining whether Plaintiff had the residual functional capacity

14

to work despite his severe impairments. The ALJ found that Plaintiff retained the residual functional capacity to "perform light work . . . subject to postural limitations." (See id. at 15.)

Since Plaintiff's past relevant work as a construction worker required a "heavy exertional level," the ALJ found that Plaintiff's residual functional capacity prevented Plaintiff from performing that particular type of work. (See id. at 17.)

Consequently, at the fifth step, and after considering Plaintiff's residual functional capacity, age, education, and work experience, the ALJ concluded that, while Plaintiff could no longer perform his previous work, there were still many jobs in the national economy suitable for Plaintiff. (See id. at 18.)

## C.   The ALJ's Conclusions Were Supported by Substantial Evidence

### 1.   ALJ's Weighing of Opinions

In reaching his decision, the ALJ relied heavily on Dr. Branker's findings and conclusions about Plaintiff's abilities, which were supported by detailed clinical and laboratory findings. See 20 C.F.R § 416.927(d)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."). Specifically, Dr. Branker tested Plaintiff's spinal

15

motion for limitations of motion, finding it normal except for decreased backward extension to thirty degrees. (See R. at 112.) She also tested Plaintiff's ability to move through various motions. (See id. at 113.) A lumbosacral x-ray she ordered produced a negative result. (See id. at 113, 115.)

Conversely, the ALJ rejected most of Dr. Patel's assessments. (See id. at 17, 126-28, 138.) The opinions of a claimant's treating physician are entitled to controlling weight if they are well supported by medical findings and not inconsistent with other substantial record evidence. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); see also Burgess, 2008 WL 3248567, at * 11; Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000). When other substantial evidence in the record conflicts with the treating physician's opinion, that opinion will not be deemed controlling, and the less consistent that opinion is with the record as a whole, the less weight it will be given. See 20 C.F.R. § 404.1527(d)(4); see also Halloran, 362 F.3d at 32. Thus, the ALJ must consider the following factors when the treating physician's opinion is not given controlling weight, as is the case here: (1) the frequency of examination and the length, nature, and extent of the treatment relationship; (2) the evidence in support of the alternate opinion -- the more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the

16

more weight that opinion is given; (3) the opinion's consistency with the record as a whole; (4) whether the opinion is from a specialist; and (5) other relevant but unspecified factors. See Shaw, 221 F.3d at 134; Clark v. Comm'r, 143 F.3d 115, 118 (2d Cir. 1998); Schaal, 134 F.3d at 503.

While Dr. Patel had a long relationship with Plaintiff, Dr. Patel is a pediatrician, not a specialist in the areas of Plaintiff's alleged impairments, and he did not provide any clinical or laboratory evidence to support his assessment of Plaintiff's physical condition. (See R. at 122-128.) In his assessment, Dr. Patel only cited "H.S.S. Systems" as support for his finding that Plaintiff had impairments; however, the H.S. Systems report clearly contradicts many of Dr. Patel's findings. (Compare, R. at 112, H.S. Systems report noting "hearing adequate," with R. at 124, Dr. Patel's finding that Plaintiff has seeing, hearing, and speaking limitations.") Dr. Patel's responses to the questionnaire about Plaintiff's physical capabilities suggested limitations severe enough to prevent Plaintiff from working (see, e.g., R. at 122, noting Plaintiff could stand or walk "less than 2 hours in an 8-hour work day"), but provided no support for that conclusion. (See id. at 123, ¶ 5, leaving blank the portion of the questionnaire asking for support for medical findings.)

In contrast, Dr. Branker's report noted only minimal decreased

back movement, with all other conditions stable; nothing in the report suggested any level of incapacity found by Dr. Patel. (See id. at 111-14.) While Dr. Patel noted that Plaintiff had conditions which affected his mental capacity to engage in various work-related activities (see id. at 126-28), Dr. Branker's examination of Plaintiff did not find that Plaintiff experienced any mental impairments stemming from his conditions. (See id. at 112-13.) Furthermore, in neither his application nor his testimony, did Plaintiff mention any deficiency in his mental capabilities. (See id. at 37-43,142-57.) As a result of the foregoing, the Court concludes that the ALJ properly regarded Dr. Branker's report as more persuasive and controlling than Dr. Patel's assessment.

### 2.   Plaintiff's Ulcer Disease

The ALJ concluded that Plaintiff's ulcer disease did not affect his ability to work. The administrative record included the following: (1) Dr. Branker diagnosed Plaintiff's history of ulcers as clinically stable; (2) Plaintiff treated his ulcers with Zantac and Maalox; (3) an esophagogastroscopy prior to Dr. Branker's examination revealed that the ulcer was not severe enough to require a blood transfusion; and (4) during Plaintiff's testimony before the ALJ, he stated that he was getting treatment for his ulcers, and more importantly, the ulcers did not affect his ability

18

to work.   (See id. at 111, 113, 148-49.)   Thus, there was substantial evidence for the ALJ to reasonably reach his conclusion regarding plaintiff's ulcer disease.

### 3.   Plaintiff's Back Pain

The ALJ concluded that Plaintiff's back pain was not completely disabling. Under appropriate circumstances, the subjective experience of pain can support a finding of disability. See Snell v. Apfel, 177 F.3d 128, 135 (2d Cir. 1999); Gallagher v. Schweiker, 697 F.2d 82, 84 (2d Cir. 1983). Moreover, a claimant who alleges a disability based on the subjective experience of pain need not adduce direct medical evidence confirming the extent of the pain, but the applicable regulations do require "medical signs and laboratory findings which show that [the claimant has] a medical impairment(s) which could reasonably be expected to produce the pain." 20 C.F.R. § 404.1529(a); see also 42 U.S.C. § 423(d)(5)(A) (stating that a claimant's report of pain is insufficient to establish disability in the absence of medical findings of an impairment that could reasonably be expected to produce the pain alleged).

There is no evidence that Dr. Patel conducted any tests which found objective evidence of a condition that would cause Plaintiff's back pain. In the absence of the requisite "medical

19

signs and laboratory findings," the ALJ reasonably concluded from the evidence that Plaintiff's back pain did not leave him completely unable to work. Dr. Branker's examination revealed that nearly all of Plaintiff's physical functions were normal, and that Plaintiff only had a slight limitation of movement in his back. (See R. at 112-13.) A lumbosacral x-ray came back negative. (See id. at 113, 115.) Plaintiff continually engaged in social activities that would be difficult to do with the severity of back pain he alleged. (See id. at 45-48, 112, 153-55.) Accordingly, the ALJ's conclusion that Plaintiff's back pain was not completely disabling, was supported by substantial evidence.

However, in concluding that Plaintiff's back pain was not completely disabling, the ALJ disregarded some of Plaintiff's testimony. Plaintiff testified that, because of his back pain, he could only stand for twenty minutes and sit for fifteen minutes at a time. (See id. at 155.) The ALJ had, however, significant discretion to evaluate the credibility of Plaintiff's complaints in light of medical findings and other evidence. See 20 C.F.R. § 416.929 ("Statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged"); see also Mimms v. Heckler, 750

F.2d 180, 186 (2d Cir. 1984); Brandon v. Bowen, 666 F. Supp. 604, 608 (S.D.N.Y. 1987) ("Where subjective symptoms are reported, the ALJ has discretion to evaluate the credibility of the claimant and to arrive at an independent judgment, in light of the medical findings and other evidence, regarding the true extent of the [symptoms] alleged"). Consequently, the ALJ's decision to discredit some of Plaintiff's assertions regarding his pain was in accord with the governing regulations. Indeed, as set forth above, the objective medical evidence showed no serious disability. (See R. at 111-15.)

### 4.   Plaintiff's Ability to Work

At the fifth step of the analysis, the Commissioner must prove that the claimant is capable of working. See Green-Younger, 335 F.3d at 106 (citing Draegert v. Barnhart, 311 F.3d 468, 472 (2d Cir. 2002)). The Social Security regulations contain grids that are used to determine what type of work the claimant is capable of performing. See 20 C.F.R. § 404, Subpt. P, App. 2. These grids set forth several factors such as a claimant's age, education, and previous work experience. They also indicate whether a claimant has the residual functional capacity to perform work in any of five categories of jobs: very heavy, heavy, medium, light, and sedentary. In the instant case, the ALJ concluded Plaintiff had a

21

residual functional capacity to perform light work.[11]   (See R. at 15.)   Relying on Medical-Vocational Rule 202.17, the ALJ concluded that claimant was not disabled because Plaintiff could perform a variety of light work, unrestricted by any of Plaintiff's additional limitations.   (See id. at 18.)

While it may have been helpful for the ALJ to have consulted a vocational expert to determine more specifically Plaintiff's prospects for employment, it was proper for him to instead rely on the Medical-Vocational Guidelines.   See Heckler v. Campbell, 461 U.S. 458, 467, 103 S. Ct. 1952, 1957 (1983) ("We do not think that the Secretary's reliance on medical-vocational guidelines is inconsistent with the Social Security Act.   It is true that the statutory scheme contemplates that disability hearings will be individualized determinations based on evidence adduced at a hearing.   But this does not bar the Secretary from relying on

---

[11] Light work is defined in the regulations as:
> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b)

rulemaking to resolve certain classes of issues.") (internal citations omitted); see also Butts v. Barnhart, 388 F.3d 377, 383 (2d Cir. 2004) (noting that exclusive reliance on the grids is permitted so long as they do not fail to describe the full extent of a claimant's physical limitations) (citing Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir. 1999).

Dr. Branker determined that Plaintiff's conditions did not impose any exertional limits that would prevent him from working. Indeed, he concluded that Plaintiff could still engage in sedentary or light work.   (See R. at 114.)   Thus, the ALJ's ultimate conclusion that Plaintiff retained the ability to perform light work despite mild exertional limitations, was supported by substantial evidence.

The Court concludes that the ALJ relied on the proper legal standards and his decision was supported by substantial evidence. The Court therefore recommends that the ALJ's conclusion — that Plaintiff retained the ability to perform certain types of work available in the national economy, and was not disabled under the Social Security Act — not be disturbed.

## CONCLUSION

For the reasons stated above, the Court respectfully recommends that Defendant's motion for judgment on the pleadings be granted, and that the action be dismissed with prejudice.

Under 28 U.S.C. § 636(b)(1)(c) and Rule 72(b) of the Federal
Rules of Civil Procedure, the parties shall have ten days from
service of this Report to file written objections. See also Fed. R.
Civ. P. 6(a) and (d). Such objections shall be filed with the
Clerk of the Court, with extra copies delivered to the chambers of
the Honorable Lewis A. Kaplan, U.S.D.J., and to the chambers of the
undersigned, Room 1660. Any requests for an extension of time for
filing objections must be directed to Judge Kaplan. Failure to
file objections will result in a waiver of those objections for
purposes of appeal. Thomas v. Arn, 474 U.S. 140, 149-52, 106 S. Ct.
466, 472-73 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d
1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d
Cir. 1992); Small v. Sec'y of Health & Human Servs., 892 F.2d 15,
16 (2d Cir. 1989).

Respectfully submitted,

THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

Dated: August 25, 2008
      New York, New York

24

Copies mailed to:

Robert C. Lunnon
2349 Jerome Avenue - #2
Bronx, New York 10468

Leslie A. Ramirez-Fisher, Esq.
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007